Plaintiffs have alleged in their complaint in this case that between October 1999 and October 2000, screenwriters Lee Alfred, II and Ezequiel Martinez, Jr. were already working on the Disney lot with a Disney executive, Brigham Taylor, on a project that they had written, a screenplay they had written called Red Hood. In August 2000, their representative, Ms. Lader, submitted another screenplay written by Mr. Martinez and Mr. Alfred to Mr. Taylor. The screenplay was entitled Pirates of the Caribbean, precisely because Mr. Taylor had told the plaintiffs that Disney wanted to create a film on the ride, but that they had no treatment or script, quote unquote. In her cover letter, Ms. Lader specifically stated that this, in essence, was not a Disney project. She said, please let me know as soon as possible because I have a draft that does not have the Disney song or the ride references that I plan to take to other studios. In other words, the screenplay exists on its own merit without any reference to, without any dependence upon the Disney ride Pirates of the Caribbean. After the submission of the Pirates screenplay, Alfred and Martinez were back on the Disney lot and they noticed their screenplay, their Pirates of the Caribbean screenplay, on Mr. Taylor's coffee table. When they raised the issue of their project, the meeting was abruptly terminated and a week later they were uncharacteristically disinvited to the Disney lot. Mr. Lowe, access isn't disputed here, as I understand. So this factual background, well I appreciate it, we all know it, and it isn't what's at dispute. So I think it would be helpful if you focus on your arguments on substantial similarity and why the district court got that wrong as a matter of law. Absolutely. The Disney movie that came out seven months later copies qualitatively and quantitatively a significant portion of the screenplay by Mr. Martinez and Mr. Alfred. This last allegation is supported by substantial evidence in the record on pages 8 to 25 of our opening brief. We identified a pattern of similarities and we actually cited to the pages of the screenplay as well as to the time code on the movie Pirates of the Caribbean. While I understand that Disney may dispute these facts, that just means that they are disputed facts at this stage of proceedings which are not properly resolved on a 12 v. 6 motion. And in fact, the Ninth Circuit just two weeks ago, in the closely analogous case of Zindel versus Fox Searchlight, came to that exact same conclusion. In that case, the court specifically found that, quote, additional evidence including expert testimony would aid in the objective literary analysis needed to determine the extent and qualitative importance of the similarities. The conclusion of the Zindel court that reasonable minds can differ on this issue has also been stated in other cases. For example, 20th Century Fox versus MSDA cited in our papers. In that case, the court held, we intimate no opinion as to whether the films are substantially similar to either idea or expression, but state only that reasonable minds could differ on key factual issues. The district court recognized that law. There's a couple of points you just made with respect to expert testimony. The recent case, Zindel says it's helpful, but I don't read it anywhere saying it's required that there's any error on the part of the district court by ruling out a motion to dismiss without hearing expert testimony. Well, if you have a case that says it's required and that is actually error by the district court, that would be helpful. And then the other point is that the district court, as I understand it, concluded that the similarities between the two works were really just pirate tropes. You know, drinking rum, the pirate having a problem with alcohol, black sails, ships, being in the Caribbean, you know, other things as well. But that really these were just things you would expect in any pirate movie. Well, the district court applied the wrong test. The district court applied the filtration test, which is not the law of the Ninth Circuit. The law of the Ninth Circuit is the selection and arrangement test. Sometimes, sometimes. I mean, it does not really depend on the works at issue. So it's clear that unprotected works are unprotected elements in a work are unprotected. So I don't see how it's error for the district court to not consider unprotected elements and look at protected elements to see if there's substantial similarity misappropriation. But the second point selection and arrangement, the argument is that we've taken a series of unprotected elements like musical notes. We've taken unprotected elements and we've arranged them in an original way. So that's different than what you call the filtration test. They're both ways of getting at whether there's substantial similarity. I didn't see anything in the district court's opinion analyzing selection and arrangement. And I'm not sure you argued it below, but I assume you did. But can you tell me, did you argue selection and arrangement below? And I didn't really see that argument in your brief. Now, I just saw arguments that these elements are protected and they're substantially the same. Your Honor, we've definitely argued it in briefs, obviously, in our opening brief and in our reply brief extensively. The plaintiffs in the lower court did ask for leave to amend. They were not given that opportunity. Presumably, in their first amended complaint, they would have included, rather than just a list of similarities, the actual selection and arrangement. And the crucial difference between the selection and arrangement test and the filtration test is that the selection and arrangement test includes unprotectable elements. In other words, you don't exclude anything. You look at everything and see that there's a pattern of elements that are similar in both words. So are you then, by making this argument now on appeal, conceding that many of the similarities you suggest are not protected? And that it's, in fact, just a matter in which they're arranged and organized in the screenplay and in the movie that leads to the conclusion that there's substantial similarity? In this case, Your Honor, there's both protectable and protectable similarities. But you really don't need to distinguish between the two for purposes of applying the selection and arrangement test. You consider both. You just look for a pattern. And the fact that the selection and arrangement test is the law of the land has even been affirmed recently in the Led Zeppelin case. I'm sorry? Mr. Law, could you give us some examples of the pattern for selection and arrangement between the screenplay and the movie? Yeah. It's essentially, if the court looks at pages 8 to 25 of our opening brief, the court will see that the plots, the sequence of events, track almost identically. It's a very, very pronounced pattern. It's as if Disney used the architecture of our work. They may not have—they might have different flooring or added a room, which basically is disregarded because the court is not supposed to look at dissimilarities. The similarities do not have to be exact. Literary works get very thick protection. And whether it's protectable or unprotectable, the similarity does not come into the equation. So in this case, they may have added a character here. They may have changed some of the characters from children to adults. But basically, the architecture of Pirates of the Caribbean is identical for all intents and purposes, or very close, substantially similar, to our client's screenplay. I think we point out the sequence of events that parallels the screenplay in pages 8 to 25 of our opening brief. I don't think I could say it better today than we've described it there. And the advantage there as well is that we've cited not only the pages of the screenplay, but to the time code on the movie as well. And it's all, you know, it's all rock solid. But I do think that the Zindel versus Fox Searchlight case does stand for the proposition that, you know, additional evidence, including expert testimony, would aid detective literary analysis needed to determine the extent and qualitative importance of the similarities. And that case literally came down two weeks ago and is indistinguishable from this case in all meaningful respects. Is that the heart of your argument, Mr. Lowe, that it was the failure of the district court to consider expert testimony on the selection and arrangement similarities that, at the end of the day, causes a remand to the court? Is that the main thrust of your argument? No, I think that, well, that is one of the thrusts of my argument that's supported by the Zindel versus Fox Searchlight case, which, as I said, is practically indistinguishable. But even more importantly, Your Honor, the court applied the wrong test. If you apply the filtration test, which is what the court applied, you filter out all the unprotectable elements ab initio. And so once you've finished filtering out all the unprotectable elements, which the court did, the court ended up, as courts so often do, with nothing left. When the selection and arrangement test is applied, which wasn't even mentioned by the court and wasn't applied at all, you include all of these unprotectable elements, but you look for a pattern. That is one of the major mistakes that the court of appeals made in this case. I mean, the district court made in this case was to apply a test that, in essence, excluded elements that should have been considered. They should have been looking for basically a pattern that is in both words, and they did not do that. So you've acknowledged you didn't plead that. Did you actually argue a selection and arrangement theory in the district court? I wasn't the attorney in the lower court, and I'm not sure as a candidate right now whether or not those words were specifically mentioned or not. But clearly, that was the test that should have been applied by the lower court. And I believe in the papers before the lower court, they did cite cases which did apply that. There's a case that came down in 2014 called Wilson v. Disney. The court in that case said, although Disney is correct that differences exist between the works, the plot and sequence of events have too much in common for a court to conclude that no reasonable juror could find such a similarity. That point here, that if there is any possibility that a reasonable juror could find a similarity, and I think, again, if the court looks at pages 8 to 25 of our opening brief, that would certainly be the case, that in that situation, it's a factual issue that's not supposed to be determined on a 12b6 motion. It's supposed to be either decided by the trier of fact, the motion for summary judgment, or at trial, but certainly not on a 12b6 motion. Because in this case, the similarities are extremely substantial, and I think if the court were not to find that in this case, that this would really place virtually impossible obstacles for screenwriters to recover for infringement, the similarities are very compelling. It's just a matter of applying the correct test. Mr. Lowe, do you want to save the remainder of your time for rebuttal? Yes, please. Okay. Good morning, Your Honor. Can you hear me? Yes, now we can. Great. Your Honor, this is Melinda Lemoine on behalf of the Walt Disney Company and the rest of the athlete. May it please the court. I'd like to start, Your Honor, this morning with this sort of disjointed idea about the selection and arrangement of unprotectable elements. I think Judge Beatty, you're exactly right, that below there was, and here on appeal, there's a concession that a lot of the elements we're talking about here are unprotectable elements that are sort of generic to pirate stories. How do we know what's generic to pirate movies? I can't say that I'm schooled in the history and lore of piraterism or whatever you want to call it, whatever it might be called. How do you know what's generic or scenes la faire? How does one know that? So you can say as a matter of law, there is no infringement here. I mean, that's what I have a hard time figuring out. I understand that, Your Honor. So I think in general, what we look to is whether you recognize the character in common. For instance, here we have a cocky, young, handsome pirate who likes rum. I think we all sort of based on our general familiarity with pirate stories recognize that pirates are generally cocky and like rum. You don't often see shy, self-effacing, sober pirates. So it's sort of part of what we understand about the meaning of stories. Well, I mean, I don't know. Go ahead. I want to hear your argument. Because I'm kind of curious. I understand. I think that in this case, Your Honor, we have the unique situation where the complaint actually alleges several works of pirate literature that it refers to in sort of describing where its work fits into that. It references Treasure Island, Peter Pan, and all these different stories about that feature pirate in a way to try to sort of identify what is different about theirs. And below, we had concessions from the plaintiffs that are helpful here about at the opening brief, these lists at page 3132, and their opposition to the motion to dismiss at ER 63, 72, and 77. They're acknowledging that a lot of these elements are unprotectable, sans affair, like attacking a port town, caves with treasure in them. Pirates look for treasure, treasure maps, ships with black sails. So I don't think it's a struggle so much with why these things are sans affair. I also want to step back for a moment and say, you know, the court does not. First of all, the court does filter out unprotectable elements under the extrinsic test. That's the law of the circuit in several cases, Benet, Funky Films, that the district court correctly applied here. But I would say that if you don't defend that, you don't have to have any comfort about whether this is a common element in narrative. Because what plaintiffs are generally pointing to here are a lot of different ideas, right? The idea, for example, of supernatural pirates. That idea is not itself protected by copyright law because we want to reserve, you know, supernatural pirates for the next pirate movie. We want it to be part of the repository of tools available to every screenwriter. So we have to look at how that work, how that element, how that idea is expressed in both works. And I think that's where you see that these two works are not at all similar. In looking at how those ideas are expressed, here we have the supernatural pirates on ER-265 are ghostly looking. They paint their faces to look like skulls. And it's sort of an afterthought that they're ghosts. They're ghostly looking or paint their faces to look like ghosts. It's not a central part of the plot. Whereas Curse of the Black Pearl, we have this, you know, it's essential to the plot that these pirates are cursed by this Aztec gold that they found to walk the earth as essentially skeleton zombies that are only exposed in moonlight to actually be skeletal. And, you know, it's just the expression of that idea to different things. You don't really have to decide whether, you know, supernatural pirates are sons of fair to hold that those things are unprotectable, that the idea of supernatural pirates is unprotectable. These strike me as all being very factual determinations. And one of the things that troubled me a lot about this case was the resolution of these issues on a Rule 12 motion to dismiss, which seems to give the court a much narrower focus to approach on. Why are these appropriate issues for the court to decide at that procedural stage of the case? Well, Your Honor, when the works are before the court and capable of analysis and examination, this court holds that the court may decide the question of substantial similarity on the pleading. And this needs to be Nike, a published decision at page 11, 23, the jump site. Judge Walker explains that when the works are before the court, the court can analyze them and make that comparison. Nothing is going to change about these two works. They're always going to be the same two works. The court can review and pass on that. That's suggested there should never be a trial. Absolutely not. We can just decide it on the papers. I mean, end of story. I'm not suggesting. You're right. That cannot be the law. I'm not suggesting that there aren't some cases. And, you know, the courts recognize them. Zimdel is one of them that my friend decided that there are some cases where the showing of similarity is sufficient to give rise to some question. That's not this case. My friend pointed to, you know, pages 8 to 25 where he left these similarities. To be fair, respectfully, the works do not support the alleged similarities that they point to in their opening brief. If you read the screenplay and review the film Pirates of the Caribbean, Curse of Black Pearl, those similarities do not exist in both works. They are profoundly different works. And that's not a factual determination that needs further development through discovery or expert testimony. That is something that you can see because the works are before the court now just as they were before the district court. Ms. Moynihan, maybe you could help me understand how, at least from your perspective, I mean, you've thought about this a lot deeper probably than I have over the past couple of months. But how do you understand when you're applying the extrinsic evidence test here, as we are here, the obligation of the court to look at arrangement, coordination, and whatnot, along with the filtering out test. How do the two fit together? Are they entirely separate tests? Are they subsumed? Is the court, is just part of the test, the obligation to look at how elements may fit together as a pattern? How does it all fit together analytically? I understand that. So the extrinsic test is the test to apply. And the court must filter out unprotectable elements. And there are laws stating that it is possible to create something protectable through a combination of unprotectable elements, which is much more easily understood when it's like a piece of music or a pattern or fabric. A combination of unprotectable elements can itself be protectable. But the district court doesn't have to go searching for whether there's some combination of those unprotectable elements that it believes is protectable. The obligation of the plaintiff to say this particular pattern of unprotectable elements is itself protectable and overlaps with the supposedly offending work. I think Metcalfe, which plaintiffs rely on, is a great example of this, right? Where Judge Kavinsky lists a long list of similarities. And that he believes create a pattern that has to be replicated in the supposedly infringing work. We really don't have a pattern here, Your Honors. Judge Piatti asked my friend for one. I think he pointed to several pages of this brief. But I don't think we have an actual pattern. And you definitely don't want that pattern, by the way, to be something that's sort of inherent in any story. So, for instance, this idea of story architecture that I heard him mention. That there's a beginning, that they find the map, that they go find the treasure according to the map. Of course they're going to find the map before you find the treasure, right? You want it to be a collection. They need to point to, rather, a collection of unprotectable elements that is in itself original and that overlaps with our work. And I would say they have not done either here because they really can't. The works are so different that you cannot make that determination. I would say, too, my colleague mentioned a couple of times that you cannot look at differences. Of course you can look at differences. This court in Binet looked at the differences between the two works. There are several examples of the court looking at examples of differences. You can't really weigh whether these things are similar unless you also consider how they're different. Ms. Malgrave, I want to go back to your question about the 12 v. 6 posture. I would say that this court also recently, in Daniels v. The Walt Disney Company, analyzed whether elements are protectable at a motion to dismiss and affirmed in that case. The court also routinely affirmed the dismissal of copyright infringement cases in unpublished decisions because the allegedly similar elements are unprotectable. Certainly, if the allegation was that the Little Mermaid offended the protective element in this case because they were both involved in adventures at sea, I think that would be very susceptible to a Rule 12 dismissal. But when there's a closer similarity of issues as we have here, that's a point at which the procedural posture troubles me. I have no doubt that there are plenty of cases where it's appropriate. I just struggled with that here given the similarities that existed that it lent itself to a Rule 12 disposition. I don't think that there are similarities that give rise to that kind of question. I think this is one of those cases. I don't see this as a close case. I think this is one of those cases that's clear that the elements that they point to that are similar are things like treasure, which by the way is expressed differently in each work. It's just as a matter of reviewing the work, it's different. Their treasure story is a search for treasure. Our treasure story is a cursed treasure that needs to be returned. It's not a factual determination, Your Honor, because the works are there to be reviewed and analyzed. Again, the supernatural pirate differences I mentioned, the characters are inherently different. Their young pirate, Davy Jones, is not the same person as Jack Sparrow as they claim. He is sure he's cocky, he's young, and he likes rum. They both do that, but they both play are totally different people. They have a different role in the story. Their character is a traditional romantic hero who resents and regrets his life of piracy. And Captain Jack Sparrow knows nothing of regret. He's all about being a pirate. He's just trying to get the captain of the Black Pearl back. The works, I think, upon their review just aren't reasonably susceptible to the analysis that my friends offered in pages 8-25 of their brief. What we have here, as what this court pointed out in Skidmore, Your Honor, the inmate's decision, was that plaintiffs cannot establish substantial similarities just by reconstituting the copyrighted work as a combination of unprotectable elements, and then claiming they also appear in defendant's work in a different aesthetic context. Well, you know, Skidmore was significantly different in this case. Skidmore was decided after a hotly contested trial. Sure, but that's a legal principle that Skidmore announced about the theory of selection and arrangement and what the plaintiffs must show, and that they cannot show that here, right? There's nothing about – they won't be able to show that here because the works are not going to change. So I want to also say about the expert testimony point. No one asked for expert testimony below. No one asked for – Well, it's not proper. I mean, you can't ask for it under 12b-6. I mean, you couldn't. The court would have been required to convert it to a summary judgment proceeding if anybody had produced an affidavit. Well, actually, the court in Shame on You Productions, which this court has affirmed, declined to consider an affidavit, a judgment of the pleading, without converting it. Is that a published opinion?  Judge Morrow's decision is – I don't see how you can consider an expert affidavit on a 12b-6. She did not consider it, but it was appropriate to decline to consider it, is what she held. So because it wasn't going to change anything. It's more argument. And basically, that's what plaintiffs are pointing to here, Your Honors, I think. They're pointing to – they're saying only in their apologies are they saying that an expert could give them more argument to make but framing what they see as a similarity in this case. It's not going to change the works. It's going to give us another opportunity to make arguments about what they see as similar. And that – there's no need to regret. I understand our case law allows us to say on a 12b-6 that as a matter of law, there is no substantial similarity. I understand our case law says that. And you look at Ryan – was it Rentmeister, the photo of – Yes. You know, that's a very classic example of that taking place. But nonetheless, it does seem that you got to be very careful when you do that. You got to be sure because what you're saying is there's no plausible claim. There's no plausible basis for the alleged infringement on a 12b-6. And it seems to me that that determination would be easier on summary judgment because on summary judgment, you can actually take a look at everything. And then you can say no reasonable trier of fact could conclude that there would be infringement, which from my perspective as a judge, I even find that in some instances to be a difficult call. But it's an easier call in an instance like this where you're looking at elements and you're looking at scenes of fare and you're looking at what's generic and you're looking – it seems – it just strikes me as odd. But I know I recognize our case law says it. Judge, we can do it. But I think it's difficult. I understand that. And I think that in this case, it is not if you review both works. And we haven't addressed the fact that the ride – it's proper to consider the ride also on the motion to dismiss at this stage because it was incorporated by reference. And I don't think there's really any dispute that you can consider the ride. There's only a dispute about what – which version of the ride you can look at. Right. And to be clear, Your Honors, we're fine if you want to look at the ride as depicted in the plaintiff – what the plaintiff has pointed you to. But I think it shows that there isn't actually a very difficult question here about Sons of Fare or any of that. All the elements they're alleging are similar. The port town, the skeleton, the treasure come from the ride, come from Disney's ride. And they allege that they incorporated elements of the ride in their complaint. This court is clear that when you have incorporated something by reference, the district court can look at it. And the district court properly did that here to make the determination that this wasn't a close case like the kind Your Honor is describing. I would say that, Your Honors, the cases that have made that determination and decided that the case needs to proceed beyond the pleading are much, much, much, much more closer than this one. They raise – if I look at the sort of plot pattern in Vindel, we're talking about what gave the court concern there was a cleaning person at a military base, an aquatic creature, they develop a relationship, they fall in love, and she before takes the escape of the creature in a laundry basket. So that is a much higher level. I mean, my colleague, Mr. Leno, characterized that as indistinguishable. That's distinguishable from the similarities that we point to here. There are no such similarities here. At most, we have a basic framework of occasional similarities that are inherent to both our ride and pirate stories. The district court got it right here when she applied the extrinsic test and filtered out those unprotectable elements on the motion to dismiss. I have one last question before this gets back to one of my questions and the procedural posture of the case. Even though the district court looked at the elements and did her filtering analysis, was she still obligated to go on and assess selection and arrangement and coordination? I do not think she was, Your Honor. The point is they didn't point her to a pattern below that they claimed was comprised of unprotectable elements that she should consider. So I don't believe she was obligated to do that. I think that that's a theory by which some go against claim infringement, but it's not going to occur in every case. I don't think it occurs here. I don't think we have a pattern that rises to the level that Judge McKeon described in Skidmore or Judge Convinci described in Metcalf. We have to be extremely careful about what you identify as a collection of unprotectable elements that is self-protectable. You don't want to carve out those unprotectable elements from everyone's general screenwriting toolbox. You need to be very careful about that. So I think you need the litigants to point you to where they believe they have a pattern or sequence that rises to the level of that sort of unprotectable element arranged in one way. They have to have arranged them similarly to our work, and that's what we don't have here. So with that, I ask the court to please affirm this report. Okay. Thank you, Ms. LeMoyne. Mr. Lowe. Yes, Your Honor. Could I get three minutes, possibly? We'll put three minutes up there for you. Thank you, Your Honor. Your Honor, first of all, with respect to the point that you raised about what is and what is not generic or a seen affair, the law is very clear on that, that the defendants have the burden to establish what is and what is not a seen affair with actual evidence, which they didn't even attempt to do in this case. They just basically argued that things were a seen affair without actually providing any evidence to the court to make those conclusions. So one of the things that we raised in our briefs was to the extent that they're arguing that things are unprotected because they're a, quote, unquote, seen affair. There's not a proper record before the court to come to that conclusion. Second of all, with the selection and arrangement test, the Led Zeppelin case, the Skidmore case, literally this year concluded that copyright infringement may be based upon, quote, the original selection and arrangement of unprotected elements. And clearly, unquote, clearly that is the law of the land now. And that is inconsistent with the filtration test because, as I pointed out, the filtration test excludes unprotected elements. The selection and arrangement test includes them. Also, one of the things that Ms. LeBlanc mentioned was basically slight differences between the similarities between the movie and the screenplay. There's always going to be slight differences. That's why literary works get thick protection, precisely because you can have the same impact and effect with something that's similar but not identical. The Supernatural Pirates, for example, in our work, that is close enough to the Supernatural Pirates in the Disney work to where the distinction, the differences should be discounted because of the thick protection that we're entitled to under the law. In terms of 12b6 motions, it is true that there are times where the court has decided these cases on 12b6 motion. However, first of all, it's only in cases where the facts are so clear that there cannot possibly be any kind of dispute of facts whatsoever. And the trend is away from that. The Hall case, for example, the Hall versus Taylor Swift case, which just came down in December, the court, the Ninth Circuit, backed away from deciding these types of issues on a 12b6 motion and reversed the district court. Similarly, in the Zindel case, they reversed the district court because the courts are, the trend is away from deciding these types of complicated factual issues, which it is, on a 12b6 motion. Ms. Lamont mentioned Metcalfe versus Bojko as there being a lot of similarities in that case. We actually have a chart in our reply brief where we compare not only Metcalfe versus Bojko to the present case, but also multiple other cases as well, including Shaw versus Lindheim, Liener versus Trayton. Okay. Liener versus Trayton. Mr. Ford, you're over your extra minute that I gave you. Oh, okay. So thank you. Goodbye. I'll stop, if it wants me to. I appreciate, we appreciate your arguments this morning, Mr. Lowe. So, and the matter is submitted at this time. Thank you, Your Honor. Thank you.
judges: Paez, Melgren, Bade